O. V. LUPER, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 35266.

Court of Criminal Appeals of Texas.

Jan. 30, 1963.

Joe M. Joiner, Sherman, for appellant.

Leon B. Douglas, State's Atty., Austin, for the State.

MORRISON, Judge.

The offense is murder; the punishment, 15 years.

Appellant's confession, the voluntary nature of which is not questioned, gives the following version of the homicide. Appellant had been at his Uncle Lafayette's house shooting dice on the night in question, and when they finished he, his uncle and deceased drove to Denison to a cafe. Appellant and his uncle went in, leaving deceased asleep in the back seat. While in the cafe, appellant met Arthur Ray Mask (his cousin) and told him that deceased had won a little money in the crap game. The confession continues, "We decided at this time that we would take Gus Sloan (deceased) out on the road and get the money." Soon after leaving the cafe headed "to Bonham to a honk tonk," Lafayette got out of appellant's automobile and Mask and deceased remained on the back seat. Further down the road, "Arthur was trying to hold Gus and go through his pockets to see if he had any money on him," and "Arthur then told him that if he did not hold still he was going to hit him in the head with something." After passing through Bells, "Arthur got a lug wrench that was on the back floor board of the car and started hitting Gus Sloan with it." Further down the road, appellant brought his automobile to a halt when Arthur announced that Sloan was dead. At this point in the confession, we find the following, "That is when I started to get out of the car and Arthur Ray reached up and locked the door so I couldn't get out, and he still had the wrench in his hand. He says that if I do not drive him on down the road he was going to hurt me." The confession continues, "We took Gus out the right side of the car and carried him about 50 or 60 yards to a little gully that had some water in it. We laid Gus down on his back and then rolled him over into the water, face down." Appellant took Arthur Ray back to the cafe, at which time Arthur threatened to kill appellant if he told. Appellant then went by to see two girls, stopped at a poker game, and got home about sunrise. The following day, appellant found some keys in his automobile and took them by deceased's home, "I knew that he was not there * * * I was going to make it look good."

Appellant, testifying in his own behalf, admitted that the confession was correct in almost all its details but stated "Arthur Ray Mask had done nothing to lead me to believe that he would kill Sloan to get his money. Arthur Ray Mask and I never did agree to

kill Sloan, if necessary, to get his money. The killing happened so fast that it was almost over before I knew what was going on."

In addition to the above, the State proved that deceased's body was found in the vicinity described, that he had met his death from blows upon the head inflicted by a blunt instrument.

Lafayette Luper, appellant's uncle, testified for the State, related the events of the evening, the trip to the cafe in Denison where he and appellant left Gus Sloan in the automobile and where he saw appellant and Arthur Ray Mask talking together. His version was that appellant did not pick up Mask until after they had left and that he soon thereafter got out of the automobile and caught a cab back to the cafe.

Appellant introduced in evidence a confession which he made to the officers some few days before the one introduced in evidence by the State, and we are unable to find any substantial difference in the two documents.

■ We overrule appellant's contention that the evidence is insufficient to corroborate appellant's confession. He testified to practically the same facts as contained in the confession, and the court instructed the jury to acquit if they found that the killing of Sloan was not in any way connected with the common purpose and design of appellant and Mask and if the killing was done without the knowledge and consent of appellant upon an independent impulse of Mask. He further instructed them to acquit if they had a reasonable doubt as to appellant and Mask entering into an agreement to rob deceased. Prudently, the judge further charged the jury that the State was bound by all of appellant's confession unless shown to be untrue.

■ Appellant's further complaint relates to a question propounded by the State. On cross-examination by appellant's counsel, Sheriff Blanton testified that "Arthur Ray Mask is in jail and available if the State wants to call him as a witness." On re-direct, he was asked if the defendant had subpoenaed Mask as a witness. The question was not answered, and the careful judge instructed the jury not to consider the question pursuant to appellant's request.

Later on during the trial, appellant stated that, since it had been brought to the jury's attention that Mask "is here, we would like to agree with the State to bring him down and let him testify, let the jury hear what he has to say in this case." At the State's objection, the jury were instructed not to consider this statement made by counsel.

We cannot bring ourselves to agree with appellant that the above proceedings reflect a deliberate effort on the part of the State to make the jury believe that appellant was intentionally withholding evidence damning to him by not calling his co-indictee as a witness. In the first place, it was appellant who first made it known to the jury that appellant's co-indictee was available as a witness. Any error committed by the State in asking the question was clearly cured when appellant offered, in the presence of the jury, to agree that such co-indictee might testify.

Among the cases cited by appellant, we find only Ramirez v. State, 112 Tex.Cr.R. 332, 16 S.W.2d 814, and Grille v. State, 112 Tex.Cr.R. 561, 17 S.W.2d 833, which require differentiation. In Ramirez, the prosecutor for the first time in his argument injected the question of the availability of a co-indictee as a witness for the defense and challenged accused's counsel to explain why such witness has not been called. The objection to such argument on the grounds that such co-indictee was not available to the accused under the statute was apparently overruled, and this Court reversed because of such argument and an error in the charge. In Grille, the prosecutor also in his argument demanded an explanation of appellant as to why he had not called a co-indictee so that he (the prosecutor) might have cross-examined him. As stated, appellant in the case at bar first made it

known to the jury that the witness was available. All the State did was to ask if the appellant had subpoenaed such witness. This question was not answered, and the court instructed the jury to disregard. The error, if any, was waived when appellant offered to call such witness. We have concluded, as this Court did in Kelsey v. State, 109 Tex.Cr.R. 275, 4 S.W.2d 548, that no reversible error is reflected by the above.

Finding the evidence sufficient to support the verdict and no reversible error appearing, the judgment of the trial court is affirmed.